ROBERTS, J.,
for the Court:
¶ 1. A jury sitting before the Madison County Circuit Court found Michael Deon Taylor guilty of receiving stolen property. After finding that he qualified for enhanced sentencing as a habitual offender, *1242 the circuit court sentenced Taylor to ten years in the custody of the Mississippi Department of Corrections without eligibility for parole or early release. Taylor appeals and raises thé six following issues: (1) the circuit court committed plain error when it did not spontaneously prohibit testimony that he was the target of a “large investigation”; (2) he received ineffective assistance of counsel; (3) the prosecution improperly bolstered a witness’s testimony; (4) he was entitled to a mistrial because the prosecution did not provide his cell phone during pretrial discovery; (5) there is insufficient evidence of his guilt; and (6) the jury’s verdict is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶2. During June 2011, Alex Walker, the owner of Jackson Tree Service, called Puckett Machinery and requested that a mechanic come to a job site in Madison County, Mississippi, to fix a “skid steer” that would not start. A mechanic responded, but he was unable to start the skid steer. The mechanic called James Alan Adcock, a “technical communicator” with Puckett Machinery, for assistance in diagnosing the problem. Although the plate depicting the skid steer’s serial number had been removed, the mechanic found the serial number on the engine frame. The mechanic relayed the skid steer’s serial number to Adcock. When Adcock entered the skid steer’s serial number into the company’s computer system, it indicated that the skid steer had been stolen. Furthermore, the skid steer was originally owned by Puckett Machinery. The skid steer had been rented by Chain Electric Company at the time that it had been stolen from a job site in Hattiesburg, Mississippi.
¶ 3. Adcock called the Madison County Sheriffs Department and reported the stolen skid steer. Along with Deputy Joshua Fish, Investigators Robin Welch and Don Hicks responded to the job site where the skid steer was located. They confirmed that the skid steer had been reported as stolen. Authorities asked Walker about the skid steer. He claimed that he had bought it at the Whataburger restaurant in Ridgeland, Mississippi, from a white male with long hair and a tattoo of a jaek-o-lantern. Investigator Welch doubted Walker’s story, so he asked Walker to visit his office the following morning. Walker complied.
¶ 4. The next morning, Investigator Welch and Investigator Jeff Stewart of the Mississippi Agricultural Theft Bureau met with Walker. They told Walker that they did not believe that he had stolen the skid steer, but they also did not believe that he had bought it from a white male with a tattoo of a jack-o-lantern. Walker told the investigators that he bought the skid steer from a black male named “Mike.” Investigator Stewart showed Walker a picture of Taylor. Walker confirmed that Taylor was the person who sold him the skid steer at Whataburger. Walker also told the investigators that he gave Taylor $5,000 and two vehicles in exchange for the skid steer.
¶ 5. Taylor was indicted and charged with intentional possession of stolen property. He went to trial during September 2012. The prosecution called Adcock and Tommy Kendall, who testified regarding the discovery of the stolen skid steer, and the fact that it belonged to Puckett Machinery. Investigator Welch testified regarding his role in the investigation. The prosecution also called Randy Crawford, the chief of police for the city of Magee, Mississippi. Chief Crawford testified that Taylor was in police custody in Magee on May 10, 2011, for an unrelated crime. *1243 Chief Crawford farther testified that through a search warrant, authorities had searched Taylor’s cell phone and discovered pictures of a skid steer and a Jeep Wrangler. Next, the prosecution called Walker, who testified that he bought the skid steer from Taylor. Finally, Investigator Stewart testified about his involvement in the investigation. The prosecution rested its case-in-chief after Investigator Stewart testified.
¶ 6. Taylor’s first witness was James Hannah, an expert witness who testified that Walker’s testimony regarding the manner in which he and Taylor transferred the skid steer from one trailer to another was not plausible, because there was insufficient room to navigate two trailers in the Whataburger parking lot. After Hannah testified, the circuit court instructed Taylor pursuant to Culberson v. State, 412 So.2d 1184, 1186-87 (Miss.1982), regarding his right to testify. Taylor voluntarily chose to take the stand.
¶ 7. According to Taylor, he had known Walker for approximately two years, and he had occasionally worked for Walker’s company. Taylor testified that Walker had used the skid steer when he worked for him. Taylor also testified that he did not sell the skid steer to Walker, and he did not know how Walker obtained it. Taylor claimed that Walker had sent him the pictures of the skid steer that were recovered from his cell phone. Taylor admitted that he had acquired two vehicles from Walker, but he claimed that he bought them because Walker needed money.
¶ 8. Additional facts and events will be discussed in the analysis below, as necessary. As previously mentioned, the jury found Taylor guilty of intentional possession of stolen property. Taylor appeals.
ANALYSIS
I. INVESTIGATOR WELCH’S TESTIMONY
¶ 9. Taylor claims that the circuit court committed plain error when it did not sua sponte prevent Investigator Welch from testifying that authorities “were working on several cases that involved the Tay-lors,” and that the investigation “spanned several counties.” According to Taylor, Investigator Welch’s testimony caused the jury to speculate that he was responsible for other crimes. Taylor argues that Investigator Welch’s testimony was impermissible under Rule 404(b) of the Mississippi Rules of Evidence.
¶ 10. To be precise, during direct examination, the prosecution asked Investigator Welch what he told Walker during their second meeting. According to Investigator Welch, he explained that the Madison County Sheriffs Department had been “working several cases that involved the Taylors, and [he] asked [Walker] to give [him] all [of the] information that he possibly could involving this case....” Next, the prosecution asked Investigator Welch whether he had told Walker that he would “help him” if Walker cooperated with the investigation. Investigator Welch responded, “Absolutely, because this was such a large investigation. This wasn’t just Madison County. This spanned several counties.”
¶ 11. Taylor did not object to Investigator Welch’s testimony on direct examination. “A trial judge will not be found in error on a matter not presented to him for decision.” Smith v. State, 729 So.2d 1191, 1210 (¶ 87) (Miss.1998). The Mississippi Supreme Court has held that the failure to raise a contemporaneous objection results in the waiver of any error. Chase v. State, 645 So.2d 829, 835 (Miss.1994). In other words, the failure to raise *1244 a contemporaneous objection at trial bars a defendant from raising an issue on appeal. Boggan v. State, 894 So.2d 581, 587 (¶ 26) (Miss.Ct.App.2004). Additionally, Taylor filed a motion for a new trial, but he did not claim that the circuit court committed plain error when it did not sua sponte prevent the testimony at issue.
¶ 12. Procedural bar notwithstanding, there is no merit to Taylor’s claim or the separate opinion’s conclusion that the circuit court committed plain error. Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Furthermore, “[ejvidence of other crimes or bad acts is ... admissible in order to tell the complete story so as not to confuse the jury.” Ballenger v. State, 667 So.2d 1242, 1257 (Miss.1995). The prosecution “has a legitimate interest in telling a rational and coherent story of what happened.” Id.
¶ 13. Investigator Welch’s testimony was helpful to the jury because it explained the course of events that connected Taylor to the skid steer. Investigator Welch explained that the skid steer had been reported as stolen from a job site in Hattiesburg during mid April 2011. On May 10, 2011, authorities in Magee had Taylor in custody on an unrelated charge. After obtaining a search warrant, authorities searched Taylor’s cell phone and downloaded all of the pictures that Taylor had, including two pictures of a skid steer. In other words, Taylor had a picture of the stolen skid steer on his cell phone approximately three weeks after it had been reported as stolen. According to Walker, the pictures of the skid steer looked exactly like the one he bought from Taylor during their meeting at a restaurant in Ridgeland. - To summarize, Investigator Welch’s testimony that the investigation of the stolen skid steer spanned multiple counties is helpful to the jury because it explained the course of events that led to Taylor’s implication in the possession of the stolen skid steer. Stated differently, Investigator Welch’s testimony was part of the chain of events that took the skid steer through Forrest or Lamar County, where it was stolen; Madison County, where Walker acquired it from Taylor shortly after it had been stolen; Simpson County, where the pictures were found on Taylor’s phone; and back to Madison County, where the skid steer had been recovered on June 1, 2011.
¶ 14. Investigator Welch’s testimony was also helpful because it explained why he did not arrest Walker. Walker testified that Investigator Welch and Investigator Stewart told him, ‘We know you didn’t steal the machine because you called the same people out to fix it that it was stolen from, and you gave them all of your credit card information.” Although the separate opinion repeatedly refers to Walker as a convicted felon and an admitted liar, the jury repeatedly heard Taylor’s attorney cross-examine Walker and other witnesses regarding those facts. “The jury, like any finder of fact, is entitled not only to judge credibility and weigh evidence; it is entrusted to interpret evidence that is capable of more than one reasonable interpretation.” Winn v. State, 127 So.3d 289, 292 (¶ 11) (Miss.Ct.App.2013). Moreover, Investigator Welch did not testify that Taylor’s family had been convicted of any crimes. Instead, he testified that they were involved in “several” cases that the Madison County Sheriffs Depart *1245 ment had been investigating. And there was no evidence that Taylor was involved in those cases simply because his family was. In short, Investigator Welch’s testimony was probative regarding the course of events that led to the investigation and Taylor’s implication, and it was not prejudicial to Taylor simply because it was potentially prejudicial to his family.
¶ 15. Additionally, although the separate opinion refers to Walker as a convicted felon, his status is ambiguous at best. During cross-examination, Taylor’s attorney asked Walker whether he was a convicted felon. Walker responded, ‘Tes, sir, I am.” Taylor’s attorney then asked Walker whether he was currently on probation. The prosecutor interjected and asked whether he and Taylor’s attorney could approach the bench. During the subsequent bench conference, the prosecutor asked, “Did he say what I thought he said? Well, I object to it and move to strike it.” The circuit court said, “Sustained.” Taylor’s attorney argued that “[i]t’s for impeachment purposes, Your Honor.” The prosecutor responded and said, “[H]e knows better than that.” Again, the circuit court said, “Sustained.”
¶ 16. After Walker testified that he was a convicted felon, the circuit court apparently sustained the prosecution’s objection and motion to strike when Taylor’s attorney asked Walker whether he was currently on probation. Although the record is silent on the subject, it is likely that Walker had been placed on nonadjudicated probation under Mississippi Code Annotated section 99-15-26(1) (Supp.2013) as a first offender for a nonviolent property crime. Section 99-15-26(1) provides that “[i]n all criminal cases ... the circuit ... court shall be empowered, upon the entry of a plea of guilty by a criminal defendant, to withhold acceptance of the plea and sentence thereon pending successful completion of such conditions as may be imposed by the court....” Furthermore, during closing arguments, Taylor’s attorney did not argue or claim that Walker was, in fact, a convicted felon. Moreover, assuming that Walker had been placed on nonadjudicated probation under section 99-15-26, his adjudication of guilt would initially be deferred; he would not be deemed convicted; and upon successful completion of his nonadjudicated probation, his case would be dismissed, and he could petition to have the record of his conviction expunged. Miss.Code Ann. § 99-15-26(3)-(4) (Supp.2013). Mississippi Rule of Evidence 609 does not allow impeachment unless there has been a felony conviction.
¶ 17. Additionally, Taylor voluntarily chose to testify in his own defense. On direct examination, Taylor admitted that he was a convicted felon. He also admitted that he was on probation. During cross-examination, Taylor testified that he had previously been convicted of the felony offenses of burglary, alteration of a motor-vehicle identification number, possession of a firearm by a previously convicted felon, two counts of possession of cocaine, and burglary of an automobile. Thus, even if Walker could be characterized as a previously convicted felon, the jury heard Taylor testify that he had previously been convicted of at least six felonies. Furthermore, he testified that his conviction for burglary of an automobile was in Coving-ton County; Mississippi, which diminishes any prejudicial effect from the testimony that Taylor’s family was under investigation in several counties. Not only that, the jury heard evidence that Taylor was in custody for suspicion of burglary in Simpson County when authorities searched Taylor’s cell phone.
¶ 18. The plain-error doctrine requires that there be an error and that *1246 the error resulted in a manifest miscarriage of justice. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). Considering the totality of the evidence that was presented at trial, there was no error, much less one that resulted in a manifest miscarriage of justice. A defendant is entitled to a fair trial — not a perfect one. Clark v. State, 891 So.2d 136, 140-41 (¶ 19) (Miss.2004) (quoting Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973)). Taylor received a fair trial. This issue is procedurally barred for lack of a contemporaneous objection. Procedural bar notwithstanding, this issue has no merit.
II. EFFECTIVE ASSISTANCE OF COUNSEL
¶ 19. Taylor claims that his trial lawyer was ineffective because he did not object to Investigator Welch’s testimony regarding the investigation of the Tay-lors. It is well settled that
the merits of a claim of ineffective assistance of counsel brought on direct appeal should be addressed only when (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or. (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.
Jackson v. State, 73 So.3d 1176, 1181 (¶ 20) (Miss.Ct.App.2011). Furthermore:
The question presented ... is not whether trial counsel was ... ineffective but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte[,] on the basis of trial counsel’s performance. “Inadequacy of counsel” refers to representation that is so lacking in competence that the trial judge has the duty to correct it so as to prevent a mockery of justice.
Colenburg v. State, 735 So.2d 1099, 1102 (¶ 8) (Miss.Ct.App.1999). After the jury retired to deliberate, the circuit court told both lawyers that the case had been “well tried” and said that “[i]t’s nice having good lawyers in the court.” It is patently obvious that the circuit court found no deficient performance on the part of Taylor’s trial lawyer. The parties have not stipulated that the record is adequate to review this issue, and the record does not affirmatively show ineffectiveness of constitutional dimensions. We find no obvious deficiencies that imposed a duty upon the circuit court to declare a mistrial. Consequently, we deny relief on this issue without prejudice so that Taylor may, if he desires to do so, raise his claim in a motion for post-conviction relief.
III. BOLSTERING
¶ 20. Next, Taylor argues that the prosecution bolstered Walker’s testimony by asking Walker what was expected of him on the day of trial. The following colloquy took place during Walker’s direct examination:
Q. Now, had you ever seen me before today when you and I talked in the witness room?
A. No.
Q. All right. What did I tell you I expected you to do in here today?
A. You told me you expected me to—
[Defense counsel]: Objection, Your Honor. This is bolstering. It is not relevant to why we’re here today.
THE COURT: Overruled.
Q. ... I’m sorry. What did I tell you I expected you to do?
A. Tell the truth.
*1247 Q. And what did I tell you I was going to do if you came in here and lied?
A. You said you would bum my—
Q. —Don’t say what I said.
A. You used profanity.
Q. I did?
A. Yes.
Q. I’m sorry. Did I promise you anything except to tell you that I was later on going to decide what to do with you?
A. No sir.
Taylor .asserts that the above colloquy is a method whereby the prosecution vouched for or bolstered the witness’s testimony.
¶ 21. “The admission and exclusion of evidence is left to the discretion of the [circuit] court.” White v. State, 976 So.2d 415, 417 (¶ 11) (Miss.Ct.App.2008) (citing Stewart v. State, 881 So.2d 919, 924 (¶ 17) (Miss.Ct.App.2004)). “[A] prosecutor is prohibited from stating his personal opinion as to the veracity of a witness[J” Palmer v. State, 878 So.2d 1009, 1012 (¶ 9) (Miss.Ct.App.2004).
¶ 22. During direct examination, the prosecution addressed the fact that Walker had initially lied about who he bought the skid steer from. The prosecution did not vouch for Walker’s credibility or veracity when he asked Walker what was expected of him during Taylor’s trial. This issue has no merit.
IV. MISTRIAL
¶ 23. At trial, Taylor claimed that he was entitled to a mistrial because the prosecution did not give him access to his .cell phone during pretrial discovery. Taylor argued that he needed his cell phone to determine the date that the pictures of the skid steer had been taken or received. The circuit court denied Taylor’s motion for a mistrial. Taylor claims the circuit court erred.
¶ 24. Rule 9.04(A)(5) of the Mississippi Rules of Circuit and County Court requires the prosecution to disclose to the defendant or the defendant’s attorney “the existence of which is known or by the exercise of due diligence may become known to the prosecution: ... [a]ny physical evidence and photographs relevant to the case or which may be offered in evidence[.]” See also Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). “The essential purpose of Rule 9.04 is the elimination of trial by ambush and surprise.” Wooten v. State, 811 So.2d 355, 365 (¶ 28) (Miss.Ct.App.2001) (citing Robinson v. State, 508 So.2d 1067, 1070 (Miss.1987)). “Furthermore, a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Id. at 366 (¶ 31) (citations omitted).
¶ 25. The record indicates that the prosecution gave Taylor all of the evidence it had in its possession prior to trial, including a compact disc that contained the pictures that were on Taylor’s cell phone. Taylor did not request the cell phone until after the prosecution had rested its casein-chief. At trial, Taylor’s counsel argued that he wanted to see the actual date that the pictures were taken since Taylor claimed that the photos were taken at the job site while he was working with Walker, contrary to Walker’s- assertion that Taylor showed him the pictures of the skid steer at Whataburger before he decided to purchase it from Taylor.
¶ 26. The circuit court stated that Taylor should have raised the issue before the trial. The circuit court held that it was irrelevant when the pictures were taken, because they were certainly taken after the skid steer had been stolen. The actual cell phone was retrieved from the Magee *1248 Police Department during the trial. ■ Taylor’s trial lawyer examined it, and there was nothing on the cell phone that appeared to exculpate Taylor. Consequently, the circuit court reasoned that the date that the pictures were taken would not prove that Taylor did not know or have reasonable grounds to believe that the skid steer was stolen.
¶ 27. We find no merit to this issue. Taylor clearly knew when he obtained the pictures regardless of whether he took them himself or received them from Walker. More significantly, nothing prevented him from requesting the cell phone prior to his trial, so he could have it examined by an expert.
V. SUFFICIENCY OF THE EVIDENCE
¶ 28. Next, Taylor claims there was insufficient evidence to find him guilty of intentional possession of stolen property. According to Taylor, the evidence is equally inculpatory toward Walker. Therefore, Taylor reasons that it is insufficient to convict him.
¶ 29. “[When] considering whether the evidence is sufficient to sustain a conviction[,] ... the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and did so under such circumstances that every element of the offense existed[.]” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citations and internal quotation marks omitted). The evidence is viewed in favor of the prosecution. Id. Should the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,” we must reverse and render the conviction. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 30. Mississippi Code Annotated section 97-17-70(1) (Supp.2013) provides:
A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains[,] or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe [that] it has been stolen, unless the property is possessed, received, retained[,] or disposed of with intent to restore it to the owner.
It is undisputed that the skid steer was stolen. Although Taylor claimed to have never been in possession of the skid steer and that he had no knowledge of how Walker obtained it, there was evidence that shortly after it was stolen, Walker bought the $52,000 skid steer from Taylor for $5,000 and two used vehicles, including the Jeep Wrangler that Taylor had a picture of on his cell phone. Taylor testified that was not the case. We do not disagree with Taylor’s assertion regarding how the evidence may be interpreted. However, it is the responsibility of the jury to assess the credibility of the witnesses. “It is within the jury’s province to draw reasonable inferences from the evidence based on their experience and common sense.” Terry v. State, 126 So.3d 946, 949 (¶ 11) (Miss.Ct.App.2013) (quoting Arbuckle v. State, 894 So.2d 619, 623 (¶ 21) (Miss.Ct.App.2004)). Here, a reasonable jury, as the finder of fact, could accept Walker’s version of events, which was at least partially corroborated, over Taylor’s. Also, based on Walker’s testimony, a jury could infer that Taylor possessed, retained, or disposed of the skid steer, and that he knew or had reasonable grounds to believe that it had been stolen. Accordingly, there is no merit to this issue.
*1249 VI. WEIGHT OF THE EVIDENCE
¶31. Finally, Taylor claims the jury’s verdict is contrary to the overwhelming weight of the evidence. Taylor’s claim is based on the concept that Walker’s testimony was not credible, and Walker was the only witness who connected him to the stolen skid steer. When examining the weight of the evidence, we “will only disturb the verdict when it so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). The evidence is weighed in the light most favorable to the verdict. Id.
¶ 32. “The jury, like any finder of fact, is entitled not only to judge credibility and weigh evidence; it is entrusted to interpret evidence that is capable of more than one reasonable interpretation.” Winn v. State, 127 So.3d 289, 292 (¶ 11) (Miss.Ct.App.2013) (quoting Trim v. Trim, 33 So.3d 471, 479 (¶ 20) (Miss.2010)). The jury weighed the evidence against Taylor and determined that Walker was more credible than him. We find no merit to this issue.
¶ 33. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF RECEIVING STOLEN PROPERTY AND SENTENCE, AS A HABITUAL OFFENDER, OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND ISHEE, J.; JAMES, J., JOINS IN PART. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.